## No. 12,347.

EDMOND H. CHADWICK AND ANOTHER vs. THE GULF STATES LAND
AND IMPROVEMENT COMPANY.

A decree enjoining a person from reasserting title to the property involved is in reality one decreeing the plaintiff to be the owner of the same, though it may not so declare in express terms. Heirs of Delogny vs. Mercer, 43 An. 209.

APPEAL from the Civil District Court for the Parish of Orleans.
*Théard, J.*

*George L. Bright* for Plaintiffs, Appellants.

*E. Howard McCaleb* for Defendants, Appellees.

Argued and submitted February 19, 1897.
Opinion handed down March 1, 1897.

### STATEMENT OF THE CASE.

The plaintiffs in this suit are Edmond H. Chadwick and Mrs. Elizabeth Johnson (widow of William S. Gilman); the defendants are the Gulf States Land and Improvement Company, and Domingo Negrotto, Jr.

The petition alleged on behalf of Mrs. Gilman that she was, on and after the 21st of March, 1879, and up to the 3d of November, 1891, the owner of certain described property; that she sold said property on the 3d of November, 1891, to Edmond H. Chadwick, and transferred to him all her right, title and interest in and to the rents and revenues of five houses in said property, from July 27, 1889, to

November 3, 1891, and she represented in the act of sale that she was seized of said premises in fee simple and had a right to convey the same, and promised and obligated herself to deliver possession thereof to her vendee; that since the 21st of October, 1891, and until the present time, Domingo Negrotto, Jr., and the Gulf States Land and Improvement Company had illegally and wrongfully taken possession of said property and had deprived the plaintiffs of the possession, use and benefit of the same and continued to keep said possession and claimed to be the owners of the same; that they had collected the rents of said property, which had been and were still of the value of twenty dollars per month; the rents they so collected from 27th July, 1889, to November 3, 1891 (between the date they took possession and the date when Mrs. Elizabeth Johnson transferred the property to Chadwick), being five hundred and sixty-four dollars and sixty-two cents, and those from November 3, 1891, to September 6, 1896, being one thousand one hundred and sixty dollars. The petition alleged, in behalf of Chadwick, that by the act of sale from Mrs. Elizabeth Johnson (Mrs. Gilman) to him she obligated herself to deliver said property to him and to put him in possession thereof; that he acquired the property as stated in the petition and acquired also the right, title and interest in and to the rents and revenues of the five houses on the property from July 27, 1889, to November 3, 1891, the day of his purchase, which rents then amounted to five hundred and sixty-four dollars and sixty-two cents; that Domingo Negrotto, Jr., and the Gulf State Land and Improvement Company were further indebted to him for the fruits, rents and revenues of said property from the day he purchased it (3d November, 1891) until they should deliver possession to him at the rate of twenty dollars per month, the sum due up to 3d September, 1896, amounting to one thousand one hundred and sixty dollars; that he had been damaged by the wilful, wrongful, illegal deprivation of his property and the violation of his legal rights in the sum of one thousand dollars.

The allegations made by Mrs. Elizabeth Johnson were adopted and reiterated. In view of the premises, plaintiffs prayed that there be judgment, recognizing that Mrs. Elizabeth Johnson (Mrs. Gilman) was the owner of the property on the 21st of March, 1879, when she purchased it from Thomas Pickles, up to November 3, 1891, when she sold it to Chadwick; that Chadwick is now the owner of the same; that judgment be rendered *in solido*, decreeing that the de-

fendants have no right, title or interest in said property, and order-
ing them to deliver possession thereof to petitioners and pay them
the sum of five hundred ond sixty-four dollars and sixty cents, with
legal interest thereon from November 3, 1891, and the further sum
of one thousand one hundred and sixty dollars, with legal interest
from September 3, 1896 (date of judicial demand), and the further
sum of twenty dollars per month, until they deliver possession of
said property, and the further sum of one thousand dollars with legal
interest from judicial demand.

The defendants excepted to plaintiff's demand.

1. There was a misjoinder of parties, plaintiff and defendant, in
the suit.

2. Plaintiffs' petition disclosed no cause of action.

3. Plaintiffs were estopped from prosecuting the suit for the rea-
son that in the case entitled "Gulf States Land and Improvement
Company vs. E. H. Chadwick, No. 34,819 of the docket of the Civil
District Court, Division 'C,'" subsequently appealed and affirmed
by the Court of Appeals for the parish of Orleans, all the matters
and things herein involved were finally decided and the judgment
rendered in said cause constitutes the authority of the thing
adjudged and operates as a perpetual bar to plaintiffs' demand.

4. That in the case of E. H. Chadwick vs. Gulf States Land and
Improvement Company, No. 12,103 of the United States Circuit
Court for the Eastern District of Louisiana, and No. 405 of the United
States Circuit Court of Appeals for the Fifth Circuit and Eastern
District of Louisiana, all the matters and things herein involved
were finally adjudged against said plaintiff, and defendants pleaded
said judgment so rendered in said cause as *res judicata* to plaintiff's
demand; that the court was bound to give effect to said judgment so
rendered by the United States Circuit Court of Appeals and recog-
nize the validity of the same under the Constitution and laws of the
United States.    The District Court sustained the plea of "*res judi-
cata*" and rejected the demand of the plaintiffs.    They appealed.

On January 25, 1892, the Gulf States Land and Improvement Company brought
suit against Edmond Chadwick in the Civil District Court for the parish of
Orleans. Petitioners alleged that they were the owners of the property in the
city of New Orleans claimed by plaintiff. They prayed that Chadwick be cited to
appear and answer the petition; that after due proceedings there be judgment in
petitioners' favor protecting them in their possession of the property, and for-
ever enjoining the defendant from disturbing said possession or enjoyment by
slander, actual, intrusive or otherwise; that their title be recognized as valid and
that Chadwick be ordered to secure the cancellation of the inscription of his pre-

The opinion of the court was delivered by

NICHOLLS, C. J.   We direct our attention, first to the judgments rendered by the State courts.   The action brought there by the plaintiffs, the Gulf States Land and Improvement Company, was one known in law as an action of jactitation or slander of title.

Livingston vs. Heerman, 9 Martin (O. S.), 713, was an action of that kind.   The jury rendered a verdict in favor of the plaintiff for the land referred to in the plaintiff's petition, and judgment having been rendered accordingly, defendant appealed.   On appeal, counsel on his behalf said: " Defendant, though he had asserted his right to the

tended title from Mrs. Elizabeth Gilman, from the records of the Conveyance Office.

The defendant, for answer, first pleaded the general issue. Further answering, he averred that he purchased property from the owner for seven hundred and fifty dollars, in entire good faith; that prior to said purchase, and prior to the execution of any pretended deed to the plaintiffs, he, defendant, went to Negrotto for the purpose of effecting a compromise; that Negrotto seemed favorably disposed and informed him that a compromise was generally effected on the basis of one-third of the assessment of the property; that then the defendant in good faith purchased said property from the owner thereof and returned again to the said Negrotto, fully intending to arrange and compromise the matter with him in an amicable manner; that on his second visit to Negrotto he was received in an unfriendly and uncompromising manner, and that even after the institution of the then pending suit he went again to Negrotto, but was unable to compromise. He averred that his said purchase and the inscription thereof constituted no slander of title to any property owned by the plaintiffs, and he specially denied that the plaintiffs had been damaged in any sum whatever.

The District Court, on the 27th of June, 1892, rendered judgment in favor of the plaintiffs and against the defendant, ordering, adjudging and decreeing "that there be judgment in favor of the plaintiffs, the Gulf States Land and Improvement Company, and against the defendant Edmond H. Chadwick, maintaining said plaintiffs in their possession of the property, described in their petition; enjoining said Edmond H. Chadwick from disturbing said possession by slander of title, actual, intrusive or otherwise, and directing that said Edmond H. Chadwick cause to be canceled from the records of the conveyance office the inscription and registry of his pretended title from Mrs. Elizabeth Gilman of the property in question, otherwise that the same be canceled at his expense." It was further ordered, adjudged and decreed that said Edmond H. Chadwick be condemned to pay to plaintiffs, the Gulf States Land and Improvement Company, the sum of one hundred dollars, as damages and costs.

Defendant moved for a new trial on the following grounds:

" 1. The judgment was contrary to the law and the evidence.

" 2. The evidence showed that plaintiffs had no title, and that defendant had a good title.

" 3. No damages were proved and no malice shown, and the judgment for one hundred dollars damages was erroneous.

" 4. The judgment ought to have dismissed plaintiffs' suit and quieted defendant in his title, without remitting the parties to further litigation."

The court refused the rehearing, assigning as its reason that " it considered that the issues presented in the rule for a new trial had been previously disposed of and the judgment rendered should remain undisturbed."

Defendant appealed to the Circuit Court of Appeals. That court on appeal amended the judgment by allowing plaintiffs the sum of two hundred and fifty dollars as damages, but otherwise affirmed the judgment.

Subsequently, Edmond H. Chadwick brought in the Circuit Court of the United States, at New Orleans, a petitory action for this property against the Gulf States Land and Improvement Company.

On the 31st of May, 1891, judgment was rendered in the case in the following terms:

" By reason of the verdict of the jury herein and in accordance therewith, it is ordered, adjudged and decreed that there be judgment in favor of the defendants, Gulf States Land and Improvement Company, and against the plaintiff, E. H. Chadwick, dismissing this suit with costs."

Plaintiffs having appealed from this judgment to the Circuit Court of Appeals, the judgment was by that court affirmed.

batture, does not in his answer claim anything more than to be dismissed. He denied the right of the plaintiff to the twenty thousand dollars damages for the alleged slander of title, but does not pray for anything in his favor. It is then most incorrect and unfounded on the part of the plaintiff's counsel to say that if the jury's verdict could have warranted it, judgment might have been awarded in favor of the defendant, to recover that which he does not pray may be granted him  *  *  *  for these reasons the court, disregarding all which occurred at the trial, ought to decree that the defendant (Heerman), as is prescribed by the *Partidas*, shall bring his suit within a specified time for the purpose of ascertaining by the judgment of a competent tribunal his rights to the property of which he has asserted himself to be the owner." Mr. Justice Porter, as the organ of the Supreme Court, commenting on the position taken, said: " It is contended by the law in virtue of which this action is brought, the only judgment which the court can pronounce is to decree that Heerman shall bring suit. Little can be gathered from the books as to the particular practice adopted in Spain, in cases of this kind. The law, par. 3, title 2, 146, declares that no person can be compelled to bring suit except in particular cases, wherein the judge may by law, oblige him to do it; as when a man publicly says that another is his slave, etc. In these and like cases the person injured may petition the judge to oblige the defamer to bring suit and prove what he has said or to retract or to make such reparation as the judge shall deem just; if he refuses to bring the suit the party aggrieved shall be forever absolved from the charge made against him.

" The law applies according to the Spanish authority to defamation respecting property, as well as person, and that whether it be movable or immovable. Gregorio Lopez on the above cited law No. 2; Elizando Practico Universal, Vol. 2, p. 136. Now when a suit is commenced like the present is the defendant should do one of two things, either deny that he has said so, which would amount to a waiver of title, or admit the accusation, and aver his readiness to bring the suit. In the first alternative this court would proceed to try the fact whether he had defamed the title or not, and give damages accordingly. In the second they would order suit to be commenced. This it appears to me is the regular course. The object of this law was to protect possession; to give it the same advantages when disturbed by slander as by actual intrusion. To force the

defamer to bring suit and throw on him the burden of proving what he asserted. If this course had been pursued here, Heerman would have been directed to bring suit (in the language of the law) to prove what he said; and the plaintiff relying on possession would have been maintained in it until a better right was shown. Instead of doing this he has chosen to maintain the truth of what he has averred by setting forth his title in the answer and averring it to be a better one than the plaintiff's. Having done so I think the court can examine it as well in that answer as if set forth in a petition; it is only, in fact, anticipating the order which the court must have given, and coming forward at once with that title which the court would have directed him to produce in another suit. His adopting this course, at his own choice, can not change the mode in which the proof must be adduced; he must make out his title alleged and can not take from the plaintiff the advantage which he derives from his possession by varying the form in which he has thought proper to make good his claim to the premises. If it should appear that he has a title for the premises, I have no doubt that we can decree that he has not slandered the plaintiff's title; that he has a better one; and that such decision would form *res judicata* as to their titles in virtue of which the defendant can, at any time, take possession by an action to that effect, for it is not necessary to enable this court to pronounce on title that there must be a prayer to be put in possession. If the plaintiff succeeds we can declare that the defendant has failed to produce a title; that the plaintiff be preserved in the quiet enjoyment of his property and the defendant be enjoined from reasserting this title to it. This case differs little from the case of Gravier vs. The Corporation of New Orleans, except that trespass as well as slander was alleged there. But if this point was doubtful, I should have a great reluctance to send the parties back on a mere matter of form to travel over the same ground again. *Interest reipublicæ ut sit finis litium.* And never did the maxim have a more proper application than in the cases which have grown out of this subject." The court affirmed the judgment appealed from.

Mr. Justice Matthews, in concurring in the opinion, said: "The law on which this action is founded authorizes a judgment requiring and compelling a person who speaks against the title of a *bona fide* possessor, by asserting a right in himself, either to desist from such

assertions or to bring suit in support of his alleged claim for the purpose of opposing his title to that of the possessor, in order that the respective claims may be finally settled according to law and justice. If the pleadings in the present suit do place the defendant in a situation similar to that which he would hold in an action which he might be compelled to institute, I can see no good reason for delaying a final judgment in the case, and that such is his situation, I agree in opinion with Judge Porter." This case, as well as the action referred to, was brought to the attention of the Supreme Court in Proctor vs. Richardson, 11 La. 188, and though the absolute judgment of the District Court in favor of the plaintiff was reversed, for the reason that the defendant filed no answer, and did not set forth the title of his children or the grounds of their alleged pretensions, and because the defendant, the father, was not the proper defendant in the case, as he had interests conflicting with those of his children, it is clear that the court approved the opinion in Livingston vs. Heerman, that a defendant may well set forth his title in his answer and the court proceed to adjudiate upon the relative titles without the necessity of a new suit. The court remarked that actions of the kind were of rare occurrence in Louisiana, but that statement was made in 1837. The action, with its rules, is one familiar to the bar and bench. (See Dalton vs. Wickliffe, 35 An. 355.)

We think that an examination of the pleadings of the plaintiff and defendants in the original suit in the Civil District Court fully sustain the District Court in declaring, in refusing Chadwick's motion for a new trial, that the idea which he entertained that the judgment as rendered remitted the parties to further litigation was unfounded, and that the issues referred to in the motion had been definitely disposed of. The defendant was well aware, as his motion showed, that he had advanced his own title in his pleadings, for he complained of the judgment that it had not " quieted him in his title." Defendant in his pleadings set out fully his own title and attacks that set up by the plaintiff and joined issue with the latter as to his right to be accorded the judgment he prayed for. We are of the opinion, as was the District Court which rendered the decree, that the parties went to trial in that case upon the strength and merits of their respective titles, and that the judgment rendered definitively closed all future discussion as to the ownership of the property. It maintained the Gulf States Land and Im-

State ex rel. Paquet vs. Judge.

provement Company in their possession and enjoined Chadwick from disturbing said possession by slander of title, actual intrusion or otherwise; in other words, it restrained him from thereafter ever reasserting the title he had set up in his pleadings. A decree enjoining a person from reasserting title to the property involved is, in reality, one decreeing the plaintiff to be the owner of the same, though it may not so declare in express terms (Heirs of Delogny vs. Mercer, 43 An. 209). If our interpretation of the judgment of the District Court, pleaded as *res judicata*, be correct, the effect of the plea extended to Chadwick's vendor as well as to himself (Gath vs. Broussard & Martin, 49 An.     ).

The conclusions which we have reached as to effect of the judgments in the State court render unnecessary any expression of opinion as to those of the courts of the United States.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.