ROGERS, Justice.
 

 The record discloses that three independent suits brought under Act No. 38 of 1908 to establish title to three tracts of land in the lower section of the parish of Lafourche were consolidated for trial in the district court. The plaintiffs in the suits are the heirs of the original patentees of the tracts, and the defendants are the vendees- and the heirs of the deceased wife and daughter of the alleged purchaser of the tracts from the widow and heirs of the original tax purchaser, who acquired the property on December 6, 1877.
 

 Plaintiffs alleged that they are the owners of the lands in dispute under recorded titles and aver that the defendants are also claiming ownership of the property under a recorded title. Plaintiffs further alleged that no one is in actual possession of the lands described in the petitions.
 

 Defendants excepted to the petitions on the ground that: “They and their authors-in title before them, have been ever since December 6, 1877, unto this present date, in the real and actual possession, quietly and without interruption, as owners under recorded title, of the entirety of the lands to which plaintiffs now lay claim, under alleged recorded title but without possession thereunder.”
 

 With reservation of their exceptions, the defendants filed answers to the petitions-setting -up their chain of title to the lands in dispute. The primary question to be-determined, however, being that of defendants’ possession as raised under their exceptions, the case was tried and decided on the exceptions. “After hearing the evidence on the question of lack of possession vel non in exceptors, followed by argument of counsel,” the trial judge, “for reasons orally assigned and finding that plaintiffs had no right of action under Act No. 38 of 1908, as claimed by them, did maintain said
 
 *829
 
 exception, in each of said three cases.” Accordingly, plaintiffs’ suits were dismissed at their costs. From that judgment plaintiffs have appealed.
 

 The evidence discloses that on December 6, 1877, Maximillian Bernard, who was referred to as Millien or Emilien Bernard, purchased from the state tax collector of Lafourche parish 940 acres, more or less, of land situated on the left bank of Bayou Lafourche about seventy miles below the town of Thibodaux, bounded by the lands of Thibodaux and the state of Louisiana, which tract of land had been forfeited to the state for nonpayment of taxes.
 

 On May 4, 1905, the widow and heirs of Millien or Emilien Bernard sold the 940-acre tract of land to Eugene Constantin, Sr., who acquired the property for account of the firm of Bragard & Constantin, of which he was a member.
 

 In accordance with the terms of a judgment rendered and signed April 11, 1911, by the Seventeenth judicial district court for the parish of Lafourche, in the suit of Louis Bragard v. Eugene Constantin, by an act of partition executed on December 29, 1911, the 940-acre tract was allotted to Eugene Constantin, Sr.
 

 In the matter of the Succession of Mrs. Alice Bourg, his deceased wife,' Eugene Constantin, Sr., was recognized as surviving partner in community and as an heir of his daughter Alice Constantin, who died subsequent to the death of her mother, and the seven defendants herein were recognized as the heirs of their deceased mother, Mrs. Alice Bourg Constantin, and of their deceased sister, Alice Constantin.
 

 On June 18, 1926, Eugene Constantin, Sr., conveyed to his seven children, the defendants herein, his joint undivided title, share, and interest in and to the 940-acre tract and other property, thereby constituting the defendants as the record owners of the 940-acre tract. The three tracts of land involved in this suit are included within the limits of the 940-acre tract.
 

 The lands in dispute lie on both sides of Bayou Moreau, and a portion of the lands also abuts Bayou Lafourche where it is joined by Bayou Moreau. The lands are of the usual type in that sectipn of the parish — consisting of a ridge two or three arpents deep on each side of the stream, gradually sloping away to prairie or marsh lands in the rear. There is some oak and hickory timber on the property and also some open lands suitable for pasturing purposes.
 

 The record abundantly shows acts of physical possession of the lands by Milien or Emilien Bernard, his widow and heirs, and by Eugene Constantin, Sr. Milien Bernard took possession of the 940-acre tract immediately after he had acquired it at tax sale. He caused a canal to be dug through the property so as to connect Bayou Lafourche and Bayou Moreau. This canal was thereafter known as the “Milien Bernard” canal. He erected a home at the junction of the Milien Bernard canal and Bayou Moreau, and he lived there with his family until his death, tie cultivated an orange grove and erected a fence around it to protect it from overflow. In addition
 
 *831
 
 to the orange trees he planted peach trees and pomegranate trees on the property. He also engaged in cattle and hog raising and constructed cattle and hog pens on the lands. Eugene Constantin, Sr., built some houses on the property for the use of trappers to whom he leased portions of the lands. He also engaged in cattle and hog raising and erected a house for the use of his employees in the cattle and hog raising industry. Constantin’s cattle grazed on both sides of Bayou Moreau. Two of his tenants, namely, Beauregard Vizier and Armand Crossly, at one time erected a fence to keep Constantin’s cattle out of the lands which they had leased for trapping purposes. Constantin and the defendants executed numerous trapping leases on the property; defendants, through their agent Oscar Bourg, executing such leases as late as the year 1934.
 

 At the present time there are no houses or fences on the lands, except two cabins for the use of trappers operating under leases from the defendants. One of these cabins is on the tract designated by plaintiffs as the Villefred D’Hue tract. The other cabin is on the tract designated by plaintiffs as the Doucet tract. There are also the remains of a dwelling house which was erected about 1907 on the Villefred D’Hue tract. This house.was destroyed by storm in 1915.
 

 From 1877 to date all taxes due and ex-igible on the lands have been paid by defendants or their authors in title.
 

 Plaintiffs apparently do not dispute that at least up to the year 1915 the defendants or their predecessors in title had physical possession of the lands in dispute: Plaintiffs’ position is that as defendants have offered no proof of physical possession or occupation of the lands at the time of the ■filing of their suits, nor, in fact, since the year 1915, the possession of their predecessors in title is not sufficient to give defendants physical possession. In other words, plaintiffs’ position is that defendants’ possession is merely constructive or civil and not physical, as required by the provisions of Act No. 38 of 1908.
 

 The pertinent portion of Act No. 38 of 1908 reads as follows:
 

 “Be it enacted [etc.], That in all cases where two or more persons lay claim to land by recorded title and where neither of said claimants are in the actual possession of the land so claimed; either of the claimants may bring suit,” etc. Section 1.
 

 Plaintiffs argue that the expression “actual possession,” as used in the statute, means physical or corporeal possession as distinguished from Active or civil or constructive possession. ’ ■
 

 But plaintiffs’ argument overlooks the clear distinction between mere legal or fictive possession that follows title and civil possession that follows prior corporeal detention as owner.
 

 As early as 1841, this court, in the case of Ellis v. Prevost, 19 La. 251, when called upon to interpret the term “real and actual possession” found in article 49 of the Code of Practice relative to the possessory action, said:
 

 “Now, we understand the expressions, real and
 
 actual
 
 possession, contained in -this
 
 *833
 
 law, as used in contradistinction with the possession which is purely civil and legal, that is to say: with the possession which is entirely devoid of the quality of having its source in or being derived from a previous actual and corporeal one; such possession is not sufficient; but when it has been preceded by the corporeal enjoyment of' the,, thing, * * * the
 
 actual
 
 possession previously acquired
 
 is preserved and maintained, and it continues in the same manner and with the same effect,
 
 as if the thing had always been actually and corporeally possessed. * * * ” (Writer’s italics.)
 

 In 1843, when called upon to interpret the term “actual possession” found in article 43 of the Code of Practice, relative to the petitory action, this court, citing Ellis v. Prevost, held:
 

 “The word
 
 ‘actual’’
 
 in art. 43, of the Code of Practice, which requires that a petitory action must be brought against the person in
 
 actual
 
 possession of the immoveable does not mean strictly a natural or corporeal possession, in the sense of arts. 3391, 3393, of the Civil Code. It applies to a
 
 civil,
 
 as well as to a natural possession,
 
 where the defendant pretends to possess as owner.
 
 The
 
 civil
 
 possession of the defendant
 
 at the time of suit,
 
 preceded by an actual corporeal detention of the property, will suffice.” (Writer’s italics.) Barnes v. Gaines, 5 Rob. 314.
 

 This court’s interpretation of the term ■“actual,” as applied to the possession required in the law governing petitory and. possessory actions, has been uniform since the decision handed down in 1841 in Ellis v. Prevost. See Industrial Lumber Co. v. Farque, 162 La. 793, 111 So. 166.
 

 Section 2 of Act No. 38 of 1908 declares that the act shall in no wise be construed as altering, changing, or repealing the rules established by the Code of Practice for possessory or petitory actions. Therefore, the character of possession involved in either the possessory or petitory action is peculiarly applicable to this case. Since the evidence adduced on the trial of defendants’ exception shows that the defendants are in such “actual” possession of the lands in dispute as, under the articles of the Code of Practice, requires claimants to resort to the petitory action, plaintiffs in this case cannot justify their resort to Act No. 38 .of 1908.
 

 Plaintiffs allege that they, themselves, are not in possession, and the evidence in the record shows such “actual” possession in the defendants as, under the Code of Practice, protects them from attack except through the petitory action. Code Prac. arts. 43, 44.
 

 In support of their argument that this court has always interpreted the term “actual possession” as synonymous with physical or corporeal possession, plaintiffs cite the following cases, viz.: Michel v. Stream, 48 La.Ann. 341, 19 So. 215; Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574; Lacroix v. Villio, 123 La. 459, 49 So. 20; Davidson v. McDonald, 126 La. 539, 52 So. 758; McHugh v. Albert Hanson Lbr. Co., 129 La. 680, 56 So. 636; City of Baltimore v. Lutcher, 135 La. 873, 66 So. 253; Cambais v. Douglas, 167 La. 791, 120 So. 369
 
 *835
 
 and Miller v. Utley-Holloway Saw-Mill Co., 168 La. 934, 123 So. 625.
 

 Neither Michel v. Stream nor Chamberlain v. Abadie hold that “actual possession” is synonymous with “physical” or “corporeal” possession. On the contrary, the latter decision plainly indicates that “actual” possession does not necessarily mean “physical” detention or possession.
 

 Lacroix v. Villio is not authority in this case. There the court was not called upon to decide any point under the provisions of Act No. 38 of 1908. By reference, to the decision on rehearing, the final action of the court was taken without reference whatever to the statute. The property involved in that case was unimproved, and, said the court (page 21), “no one has heretofore had any other possession of it than such as follows title.”
 

 The possession was the mere legal or fictive possession, such as follows title. There was no “actual” possession. Had there been a civil possession following former corporeal detention as owner, there would then have existed “actual” possession, such as exists in the defendants here.
 

 Davidson v. McDonald does not support plaintiffs’ contention that the word “actual” in Act No. 38 of 1908 means “physical.” It is authority, however, for the proposition that if a petitory, possessory, or jactitation suit can be brought no resort can be had to the provisions of Act No. 38 of 1908.
 

 In McHugh v. Albert Hanson Lbr. Co., the court, holding that the petition not being drawn under any of the forms provided by the Code of Practice, nor under the provisions of Act No. 38 of 1908, dismissed the suit.
 

 In City of Baltimore v. Lutcher, the evidence showed that neither of the parties was in “physical” possession of the property; and it also showed that since the possession of both parties was the mere legal or fictive possession flowing from title, and not civil possession following corporeal detention, there was no “actual” possession in either. And since neither party could demand anything of the other under the articles of the Code of Practice, the provisions of Act No. 38 of 1908 were held applicable. That was the only reason that the legislative act could be resorted to.
 

 It is true that in Cambáis v. Douglas appears a statement to the effect that Act No. 38 applies where neither party is in physical possession. But that was an injunction suit, predicated on an alleged slander of plaintiff’s title by the defendant, and not a suit brought under the provisions of Act No. 38 of 1908. The statement was not necessary to the decision. And certainly the case offers no justification for plaintiffs’ resort to the legislative act in this case, when under the evidence defendants are clearly in the actual possession of the lands in dispute.
 

 And, finally, Miller v. Utley-Holloway Saw-Mill Company was a case where, admittedly, neither the parties, nor their authors in title, ever had any possession of the land in controversy, other than the mere constructive possession arising from the fact that the land was considered as
 
 *837
 
 forming part of their respective adjoining plantations. There had never been actual possession — such possession as had originated in the corporeal detention at one time of the land. Under these circumstances, the court held that it must decide which of the parties had the better title, under the provisions of Act No. 38 of 1908.
 

 It is only where neither party is in actual possession, and therefore neither the petitory, possessory, nor jactitation action can be instituted, that recourse may be had to the provisions of Act No. 38 of 1908.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., does not take part.
 

 LAND, J., absent.